**ESTATE OF William H. ROSEN.**

Supreme Judicial Court of Maine.

Argued Sept. 11, 1986.
Decided Jan. 27, 1987.

Before McKUSICK, C.J.,[*] NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

ROBERTS, Justice.

Three of fourteen beneficiaries under the will of William H. Rosen appeal from the decision of the Penobscot County Probate Court approving the fee of The Merrill Trust Company as personal representative pursuant to 18-A M.R.S.A. § 3-721 (1981) and assessing attorney fees against the beneficiaries who challenge the reasonableness of the bank's fee. We vacate the attorney fee assessment and affirm the approval of the fee of the personal representative.

█ The primary challenge raised on appeal is directed at the Probate Court's assessment of attorney fees incurred at the hearing to determine the reasonableness of the bank's fee. The appellants do not dispute the amount of the attorney fees. They claim, however, that the fees should be awarded out of the estate to be borne pro rata by all the beneficiaries. We agree. Section 3-720 of the Probate Code provides for an award of reasonable attorney fees "from the estate." M.R.Prob.P. 54(d)(1) provides that costs may be allowed "out of the estate." An award of costs against a losing party is permissible only upon an express finding that the claim or objection is frivolous or malicious. *Estate of Rand,* 505 A.2d 100, 101 (Me.1986). No such finding was made in the present case, nor would the record support such a finding. Any award of attorney fees, therefore, must be out of the estate.[1]

The appellant's challenge to the fee of the personal representative, both in the Probate Court and on appeal, is directed at the lack of itemization and the absence of any time records maintained by either the trust officer or the staff of the trust department. The bank presented the testimo-

Stern, Goldsmith & Billings, Jerome B. Goldsmith (orally), Bangor, for plaintiff.

Rudman & Winchell, Frank T. McGuire (orally), Paul L. Rudman, Bangor, for defendant.

[*] McKusick, C.J. sat at oral argument but participated no further.

1. As in *Rand,* we have no need to decide whether rule 54 permits the inclusion of attorney fees as part of an award of costs. 505 A.2d at 101 n. 1.

ny of the trust officer who described in considerable detail the problems encountered in administration of the Rosen estate. He also estimated the total time expended both by himself and by the staff. In addition, the bank presented an expert witness who testified that the fee was reasonable and consistent with what would be charged by other corporate fiduciaries in the community.

■■■ We will not disturb the Probate Court's determination of the reasonableness of the personal representative's fee except for clear error. *Estate of Tessier,* 468 A.2d 590, 597 (Me.1983). In the case at bar the court's opinion reflects a detailed review of the evidence presented and a careful consideration of the section 3–721 criteria. Unlike the circumstances described in *Estate of Davis,* 509 A.2d 1175 (Me.1986), the Probate Court in this case was not compelled to find an impermissible reliance upon a percentage fee. The appellants have demonstrated no clear error in the action of the Probate Court.

The entry is:

Order assessing the attorney fees vacated.

In all other respects, judgment affirmed.

No costs on appeal to any party.

NICHOLS, GLASSMAN, and CLIFFORD, JJ., concurring.

WATHEN, Justice, with whom SCOLNIK, Justice, joins, dissenting.

I must respectfully dissent. I agree with the Court's opinion concerning the assessment of attorney fees against the beneficiaries, but I would also vacate the award of fees for the personal representative. From my examination of the record, the inference is ineluctable that the personal representative based its fee on an undisclosed variant of the percentage fee system that was abolished by 18–A M.R.S.A. § 3–721.

The Bank requested a fee of $22,380 for handling the estate and an income fee of $3,078.72 on the income produced during the period of administration. A trust officer described the method of determining the fee in the following terms:

Well, I might point out that since the section you make reference to [referring to section 3–721] became effective in January of '81, I believe—and it's relatively new, or it was at that point new to all of the personal representatives—we did direct our attention towards the previous statute that set forth the fees that the people who were then known as executors could take. And that fee, subject to the allowance of the Court, was five percent of the personal property handled in the estate. It would only be fair to say that we did examine that fee, analyze that fee versus this estate. This estate had Schedule A assets of some $700,000. In applying the former fee of five percent to it, it was 35,000—would have been 35,000 or so dollars. We use that just as an indication of what a former fee would have been; and then we reviewed our actions and duties in conformance with the section you have referred to, and tried to fit into those criteria the work that had gone into this estate.

Under questioning from counsel the witness then offered testimony concerning the complexity of the estate but failed to relate the complexity to any definite expenditure of time. Having stated that the total fee was in conformity with the fee customarily charged in the locality, on cross-examination the witness acknowledged that it was his understanding that other banks "were charging a fee that was equivalent to five percent on the first so much and three percent on the balance." Although time records were not kept, the witness estimated that bank personnel had expended well over 200 hours in this estate.[1] Applying the rate of $80 to $100 per hour, as testi-

---

1. The witness did specify that he had personally spent 80 hours on the estate but he did not

detail in any way the remaining 120 hours.

fied to by the witness, one could conclude that the major portion of the fee was accounted for. Such a conclusion, however, overlooks the fact revealed by the record that an undetermined portion of the total hours involved clerical work, and according to the witness, such items are an overhead expense included in the hourly fee of the trust officer.

The complete absence of any rational explanation for the fee leads me to the conclusion that the percentage rate figured prominently, if not exclusively, in the calculation of the final fee. Although the fee does not correspond to any ascertainable percentage, it is justified principally on the subtle suggestion that it is less than five percent. I have no difficulty in concluding on this record that the Probate Court abused its discretion in finding a total fee in excess of $25,000 to be reasonable. *See,* *Estate of Davis,* 509 A.2d 1175, 1178 (Me. 1986). I would vacate and remand for a new hearing.